**JABURG & WILK, P.C.**
Maria Crimi Speth, ABN 012574
  E-mail: mcs@jaburgwilk.com
Aaron K. Haar, ABN 030814
  E-mail: akh@jaburgwilk.com
3200 N. Central Ave., Suite 2000
Phoenix, Arizona 85012
Telephone: (602) 248-1000
Facsimile: (602) 248-0522

**ALLEN DYER DOPPELT + GILCHRIST PA**
Robert H. Thornburg *(pro hac vice forthcoming)*
  E-mail: RThornburg@AllenDyer.com
1221 Brickell Ave., Suite 2400
Miami, Florida 33131
Telephone: (305) 374-8303
Facsimile: (305) 374-8306

*Attorneys for Plaintiff*
*Anthrop, LLC d/b/a Anthropic A.I.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ANTHROP, LLC, a Texas Limited Liability Company d/b/a ANTHROPIC A.I.,<br><br>   Plaintiff,<br>v.<br><br>ANTHROPIC, PBC, Delaware Corporation, DARIO AMODEI, an Individual, and DANIELA AMODEI, an Individual,<br><br>   Defendants. | Case No.: _____<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**WILLFUL INFRINGEMENT OF A REGISTERED TRADEMARK UNDER 15 U.S.C. § 1114(1), FEDERAL UNFAIR COMPETITION UNDER 15 U.S.C. §1125(a) AND ARIZONA STATE COMMON LAW UNFAIR COMPETITION.**<br><br><u>**JURY TRIAL REQUESTED**</u> |

   Plaintiff ANTHROP, LLC, a Texas Limited Liability Company d/b/a ANTHROPIC A.I. ("Plaintiff" or "Anthropic A.I.") hereby sues Defendants ANTHROPIC, PBC

("Anthropic"), DARIO AMODEI ("Mr. Amodei"), and DANIELA AMODEI ("Ms. Amodei") (Anthropic, Mr. Amodei, and Ms. Amodel collectively "Defendants") for infringement of a registered trademark under 15 U.S.C. § 1114(1), Federal Unfair Competition under 15 U.S.C. §1125(a), and Arizona state common law unfair competition.

In support, Anthropic A.I. alleges as follows:

### THE PARTIES

1.     Anthropic A.I, is a limited liability company formed and organized on or about March 20, 2020 under the laws of the State of Texas and maintains its corporate headquarters at 9375 East Shea Blvd., Suite 100, Scottsdale, Arizona 85260.  Anthropic A.I.'s sole director and managing member is Arizona resident Richard Gardner – and the company is an affiliate of Modulus Financial Engineering, Inc., an Arizona entity.

2.     For almost three years, Anthropic A.I. has focused on developing, designing, programming, and creating patent-pending advanced hybrid human learning systems and related artificial intelligence ("A.I.") under the trademark **ANTHROPIC A.I.** (the "**ANTHROPIC A.I.** Mark"). Anthropic A.I. registered the domain name www.Anthropic.AI (the "Anthropic A.I. Domain Name") on February 23, 2020, and later launched a website at the Anthropic A.I. Domain Name (the "Anthropic A.I. Website").

3.     Anthropic is a corporation formed and organized on January 26, 2021 under the laws of the State of Delaware.  Anthropic became authorized to conduct business in the State of California under the name "Anthropic, Inc." on February 3, 2021, and maintains its headquarters at 548 Market Street, PMB 90375, San Francisco, California 94104.

4.     According to its website available at www.Anthropic.com (the "Anthropic Website"), Anthropic is an A.I. research company which "build[s] reliable, interpretable, and steerable AI systems."  According to its LinkedIn Profile (the "Anthropic LinkedIn Profile"), Anthropic's A.I. focus is on "human feedback, scaling laws, reinforcement learning, code generation, and interpretability."  Anthropic offers its A.I. offerings (and related software) under the trade name **ANTHROPIC** (the "Implicated Name") as well as

2

the following stylized logo that includes the Implicated Name (the "Implicated Logo"):

**ANTHROP\C**

5. Mr. Amodei co-founded Anthropic and serves as its Chief Executive Officer. He maintains his business address at 548 Market Street, PMB 90375, San Francisco, California 94104. Prior to co-founding Anthropic, Mr. Amodei was previously the Vice President of Research at OpenAI - the creators of Microsoft-backed ChatGPT.

6. Ms. Amodei co-founded Anthropic and serves as its President. She maintains her business address at 548 Market Street, PMB 90375, San Francisco, California 94104. Prior to co-founding Anthropic, Ms. Amodei was previously the Vice President of Safety and Policy at Open AI.

## JURISDICTION AND VENUE

7. This Court has Federal subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§1331 and 1338(a) and (b), by virtue of 15 U.S.C. §1051 *et seq.,* in that the case arises out of infringement of a registered trademark under 15 U.S.C. § 1114(1) and Federal unfair competition under 15 U.S.C. § 1125(a) - as well as supplemental jurisdiction under 28 U.S.C. §§1367(a) and 1338 (a),(b).

8. Defendants purposefully directed and expressly aimed their actions toward Arizona by their adoption and use of the Implicated Name and associated Implicated Logo which have been used by Defendant to advertise, promote, and offer competing A.I. systems within the State – in potential competition with Anthropic A.I., Defendants committed acts which have resulted in harm to Anthropic A.I. in Arizona.

9. Venue is proper, *inter alia*, under 28 U.S.C. §1391(b)(2) because, on information and belief, a substantial part of the events or omissions giving rise to the claim occurred in this Judicial District. Defendants' further advertise, market, and promote their underlying implicated AI systems (and related software offerings) under the Implicated Name and associated Implicated Logo within this Judicial District – including

3

through the operation of the Anthropic Website and Anthropic LinkedIn Profile. All of the foregoing actions target potential customers of Defendants competing A.I. offerings within this judicial district, resulting in irreparable harm to Anthropic A.I., including but not limited to consumer confusion, as well as related damages felt by Anthropic A.I. within the District of Arizona.

10. All the foregoing was directed within this Judicial District thereby purposefully availing Defendants to the privileges of conducting business within this Judicial District. As such, the exercise of jurisdiction is reasonable.

## GENERAL ALLEGATIONS

11. Anthropic AI develops and offers for license commercially available hybrid human-computer learning systems – based upon interconnected series of layers of nodes, where each node includes a communication device associated with a human expert (the "Anthropic A.I. Technology").

12. The underlying Anthropic A.I. Technology was the subject of years of development, coding, and programming – through Modulus Financial Engineering, Inc. ("Modulus").

13. For the past twenty-five Modulus has created proprietary enterprise software solutions used by some three million clients worldwide in over 90 countries.

14. Modulus has built valuable, long-term relationships with its clients through its proprietary software and hardware systems which are often customized to meet the exact requirements of clients.

15. Modulus maintains a cadre of software developers, engineers and data scientists which are experts in deep learning, A.I., high performance computing, predictive analytics and related disciplines.

16. Based upon significant development efforts by Modulus, Anthropic A.I. was launched on March 20, 2020 as an affiliate – for purposes of advancing the Anthropic A.I. Technology, including applying for and prosecuting patent rights before the United States

Patent & Trademark Office ("USPTO") as well as Internationally (including through the World Intellectual Property Organization ("WIPO").

17. Anthropic A.I. has since continued to advance the underlying A.I. software systems, as well as to offer to Modulus (and other clients) the underlying technology.

18. Eleven days after its formation, Anthropic A.I. prepared and filed U.S. patent application number 16/836,749 entitled "Hybrid Human-Computer Learning Systems" on March 31, 2020 (the "Anthropic A.I. Utility Application") – which seeks priority to U.S. Provisional Application No. 62/986,525 (the "Anthropic A.I. Provisional Application"). Both the Anthropic A.I. Utility Application and the Anthropic A.I. Provisional Application upon which it seeks priority – include enabling disclosure of the underlying Anthropic A.I. Technology.

19. Since both patent filings, Anthropic A.I. has filed and has actively prosecuted patent applications in Brazil, Australia, China, and Canada (including a PCT Application before WIPO) which all seek priority to the Anthropic A.I. Utility Application (the "Anthropic A.I. International Applications").

20. On May 1, 2020, Anthropic A.I. prepared and filed U.S. Trademark Application Ser. No. 88/897,819 before the USPTO for the **ANTHROPIC A.I.** Mark in International Class 042 for "[s]oftware as a service (SAAS) services featuring software using artificial intelligence and a hybrid computer learning system for subjective statistical analysis and subjective predictive analysis" listing a first use in commerce date of April 18, 2020.

21. Application Serial Number 88/897,819 prominently lists Scottsdale, Arizona as the principal office of Anthropic A.I.

22. On August 5, 2020, the USPTO notified Anthropic A.I. that the "trademark examining attorney searched the USPTO database of registered and pending marks and found no conflicting marks that would bar registration" of the **ANTHROPIC A.I.** Mark in International Class 042.

5

23. On November 2, 2022, the USPTO issued U.S. Trademark Registration No. 6,616,966 for the **ANTHROPIC A.I.** Mark in International Class 042 (the "**ANTHROPIC A.I.** Registration") – based upon U.S. Trademark Application Ser. No. 88/897,819. The **ANTHROPIC A.I.** Registration remains valid and enforceable.

24. May 1, 2020 is the effective date of the **ANTHROPIC A.I.** Registration and the date on which Defendants had constructive notice of the **ANTHROPIC A.I**. Mark.

25. Since issuance of the **ANTHROPIC A.I.** Registration, Anthropic A.I has expended considerable time, efforts, and resources to advertise, promote, and market under its **ANTHROPIC A.I.** Mark. This has included pitches and demonstrations throughout the past three years of the Anthropic A.I. Technology – including discussions over potential licensing of its Anthropic A.I. Utility Application, the Anthropic A.I. Provisional Application, and the Anthropic A.I. International Applications.

26. In addition to the foregoing, Anthropic A.I maintains the Anthropic A.I. Website which includes the following description of its services and offerings: "AI Sales Automation: Anthropic AI learns about your business and prospective customers to optimize and dramatically increase sales."

27. Anthropic A.I. also maintains social media accounts via Twitter (@AI_Anthropic), LinkedIn, and related platforms for purposes of promoting its services under the **ANTHROPIC A.I.** Mark.

. . . .

. . . .

. . . .

28. Based upon the foregoing, the **ANTHROPIC A.I.** Mark has acquired distinctiveness and has become a source identifier regarding and relating to Anthropic A.I.'s hybrid computer learning system for subjective statistical analysis and subjective predictive analysis.





29. Anthropic A.I. has garnered considerable notoriety for the foregoing hybrid computer learning system based upon its adoption, use, and promotion via the **ANTHROPIC A.I.** Mark.

30. As such, Anthropic A.I. has created considerable goodwill and repute regarding its underlying software services under the **ANTHROPIC A.I.** Mark.

31. Accordingly, Anthropic A.I. maintains considerable trademark rights under 15 U.S.C. §1125(a) for its **ANTHROPIC A.I.** Mark, as well as related registration rights

under 15 U.S.C. §1114(1) under its **ANTHROPIC A.I.** Registration. Such rights are strong, valid and subsisting.

**Defendants' Secondary Adoption of their Implicated Name and Implicated Logo**

32.   Anthropic was formed in January 2021 - nine months after Anthropic AI filed the application which ultimately became the **ANTHROPIC A.I.** Registration (and nine months after Anthropic A.I.'s first use in commerce of the **ANTHROPIC A.I.** Mark).

33.   According to Richard Waters and Kadum Shubber of Financial Times's in their February 3, 2023 article – Anthropic was founded after Mr. Amodei had "a disagreement over [Microsoft and Open AI's] direction – in that ChatGPT was set on a too "commercial path and detract from its original focus[.]"   See http://ft.com/content/ (last viewed Feb. 18, 2023

34.   Ms. Amodei announced the launch of Defendants' A.I. company on March 28, 2021:

> **Daniela Amodei**
> @DanielaAmodei
>
> Excited to announce what we've been working on this year - @AnthropicAI, an AI safety and research company. If you'd like to help us combine safety research with scaling ML models while thinking about societal impacts, check out our careers page
> anthropic.com/#careers
>
> 11:53 AM · May 28, 2021
>
> 28 Retweets   8 Quote Tweets   205 Likes

35.   That same day, Defendants launched their Twitter account (@AnthropicAI):

. . . .

. . . .

. . . .



36. That same day, TechCrunch's Devin Coldewey published an article entitled "*Anthropic is the new AI research outfit from OpenAI's Dario Amodei, and it has $124M to burn*" – which noted how "Dario Amodei, former VP of research at Open AI, [has] struck out on his own to create a new company . . . Anthropic [ ] with his sister Daniela and its goal is to create 'large-scale AI systems . . .'" and announcing $124 M in initial funding.

37. The Anthropic Website reconfirms that Anthropic was "found[ed] in the beginning of 2021" and therefore adopted its Implicated Name well after Anthropic A.I.'s adoption, use in commerce, and promotion of its **ANTHROPIC A.I.** Mark. See www.Anthropic.com/news/announcement/ (last viewed Feb. 18, 2023).

38. On July 1, 2021, The Software Report announced Anthropic's $124 M in initial funding was from Facebook co-founder Dustin Moskovitz, InfoTech's CEO James McClave, Skype co-founder Jaan Tallinn, and ex-Google executive Eric Schmidt. See "*Former Open AI Researcher Leads Anthropic, A New Approach to Artificial Intelligence*" available at https://www.thesoftwarereport.com/fomer-openai-researcher-leads-a-new-approach-to-artificial-intelligence/ (last viewed Feb. 12, 2023). Moreover, that article noted Anthropic was "in no rush" to launch its software but intended to "combine AI safety

research with scaling machine models while keeping societal impacts of the technology front of mind."

39. By December 22, 2021, it was being reported that Anthropic's focus was turning to "interoperability" – namely to "examine individual activations inside arbitrary layers of the model; to perform experiments where we modify or ablate individual components and otherwise access the 'guts' of the model, and not just its inputs and outputs." See https://transformer-circuits.pub/2021/garcon/index.html (last viewed Feb. 18, 2023). Such interoperability functionality is at the heart of the underlying Anthropic A.I. Technology, and what has been developed under the **ANTHROPIC A.I.** Mark.

40. CrunchBase's Chris Metinko reported on April 29, 2022, that Anthropic closed on a Series B round of funding worth $580M – largely based upon a significant investment by crypto exchange FTX's CEO Sam Bankman-Fried (amongst others). It was reported that Bankman-Fried's investment would allow Anthropic to "further explore the safety and reliability of intensive AI Models."

41. Maria Deutscher from SiliconAngle reported that this Series B was "led by Sam Bankman-Fried" – as well as by both FTX's former Director of Engineering Nishad Singh (who had an 8% stake in FTX) and former Alameda Research CEO Carolina Ellison (Alameda was previously affiliated with FTX). In December 2022, Ms. Ellison pled guilty to wire fraud and conspiracy to commit wire fraud – regarding her role in FTX. On February 17, 2023, it was announced on Bloomberg that Mr. Singh has had pled guilty to criminal fraud regarding his role in FTX. See www.bloomberg.com/news/articles/2023-02-17/ (last viewed Feb. 18, 2023).

42. Mr. Bankman-Fried is currently out on a $250 Million bond and pled not-guilting on January 3, 2023 to eight criminal charges (including wire fraud and conspiracy to commit money laundering) and is ultimately facing 115 years of prison in proceedings before Federal District Judge Lewis Kaplan of the Southern District of New York.

43. Based on the foregoing considerable $580 M Series B investment in Anthropic overwhelming led by Mr. Bankman-Fried, Ms. Ellison and Mr. Singh – the

Implicated Name and Implicated Logo have unfortunately become integrally associated with these FTX underlying criminal matters.

44. Moreover, any belief as to any false association and/or suggested affiliation between Anthropic and the **ANTHROPIC A.I** Mark (including the underlying **ANTHROPIC A.I.** Registration) significantly risks the good-will, repute, and ability to advance Anthropic A.I.'s underlying technology and licensing efforts of its proprietary patent pending technology.

45. In light of the foregoing – Anthropic attempted to resurrect its flailing image and reputation by steering away from its prior ties to the three former FTX executives by announcement in early February 2023 a $300 million investment by Alphabet (a.k.a Google) in exchange for a 10% stake in the company.

46. Chris Metinko of CrunchBase reported on February 3, 2023 that Google's investment was to position Anthropic to compete directly with Microsoft and OpenAI's ChatGPT. See https://news.crunchbase.com (last reviewed Feb. 18, 2023).

47. Based upon the foregoing, Anthropic (through the moving forces of Mr. Amodei and Ms. Amodei) have engaged in improper and unauthorized use of the name **ANTHROPIC** (including via the Implicated Name and associated Implicated Logo) in marketing, promoting and advertising its potentially competing line of A.I. associated services and software offerings – which risks considerable consumer confusion with the **ANTHROPIC A.I.** Registration (and associated **ANTHROPIC A.I.** Mark).

48. As such, the foregoing misconduct by Anthropic, Mr. Amodei and Ms. Amodei constitutes acts of unfair competition and related trademark infringement, all of which risks considerable consumer confusion with Anthropic A.I.'s prior established trademark rights in the **ANTHROPIC A.I.** Mark.

49. All of the foregoing has resulted in considerable irreparable harm and damage to Anthropic A.I.

# COUNT I

## INFRINGEMENT OF A REGISTERED TRADEMARK UNDER 15 U.S.C. §1114

50. Anthropic A.I. re-alleges and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

51. This Count I is an action by Anthropic A.I. against all Defendants (including Mr. Amodei and Ms. Amodei) for infringement of its registered trademark rights under 15 U.S.C. § 1114 due to Defendants' willful use of the Implicated Name and Implicated Logo - all without authorization, permission or right from Anthropic A.I.

52. Anthropic A.I. maintains valid and enforceable rights under the **ANTHROPIC A.I.** Registration to the standard character mark **ANTHROPIC A.I.** in International Class 042 for "[s]oftware as a service (SAAS) services featuring software using artificial intelligence and a hybrid computer learning system for subjective statistical analysis and subjective predictive analysis" listing a first use in commerce date of April 18, 2020.

53. The **ANTHROPIC A.I.** Registration issued on or about November 2, 2022.

54. Anthropic A.I. has obtained notoriety and repute under the **ANTHROPIC A.I.** Registration over the course of the past three years – based upon its efforts to advance its underlying Anthropic A.I. Technology.

55. In addition, Anthropic A.I. has engaged in efforts to advance its international trademark rights through the Anthropic A.I. International Applications.

56. Based upon the foregoing, Anthropic A.I. has been expending time and considerable efforts to promote, demonstrate and showcase the capabilities of the underlying Anthropic A.I. Technology – all of which has been done through the use and display of the **ANTHROPIC A.I.** Registration (and underlying **ANTHROPIC A.I.** Mark).

57. Anthropic's later adoption and wrongful use (through the selection, approval and consent of Mr. Amodi and Ms. Amodei) of not only the Implicated Name but also the

Implicated Logo – through the Anthropic Website, Twitter account (@AnthropicAI), as well as its various marketing and advertising plugs in the media regarding the foregoing various investments – is in the very same software field as Antrhopic A.I., based upon the same focus regarding machine learning as in the Anthropic A.I. Technology, and targets the very same groups of customers.

58. All of the foregoing is likely to cause consumer confusion, mistake or deception as to source, sponsorship, affiliation, or authorization by Anthropic A.I., or alternatively, to destroy the origin-identifying function of the **ANTHROPIC A.I.** Registration (and underlying **ANTHROPIC A.I.** Mark).

59. Put another way, Anthropic A.I.'s ability to advance its licensing and research efforts of its Anthropic A.I. Technology is directly and negatively implicated by Anthropic's brazen decision to ignore these prior, publicly announced, and well-established trademark rights – by adopting a slavish copy of the **ANTHROPIC A.I.** Mark.

60. As a proximate result of Anthropic – as well as the direct actions of Mr. Amodei and Ms. Amodei – Anthropic A.I has suffered, and will continue to suffer damage to its business, reputation and goodwill – and is thus entitled to recover significant damages for the foregoing injuries based upon Defendants' willful conduct.

61. Defendants' brazen actions of including investors such as Mr. Bankman-Fried, Ms. Ellison and Mr. Singh – all risks having the **ANTHROPIC A.I.** Registration (and underlying **ANTHROPIC A.I.** Mark) unfortunately associated with the confusingly similar Implicated Name and Implicated Logo, and the therefore linked with the underlying negatively surrounding the FTX criminal investigations.

62. Anthropic A.I.'s rights associated with the **ANTHROPIC A.I.** Registration were well-known – based upon public record, including a search on the www.USPTO.gov trademark search tool. Information regarding Anthropic A.I's trademark rights and well-established priority of use of the **ANTHROPIC A.I.** Mark – was easily discernable by Defendants – who either failed to conduct a quickly performed on-line search or simply

ignored and cast away Anthropic A.I's established trademark rights when Defendants choose to adopt this almost identical mark (and slavish copy of the **ANTHROPIC A.I.** Mark) when improperly choosing the **ANTHROPI**C name.

63. Defendants' willful conduct will continue to cause irreparable harm to Anthropic A.I. unless Defendants are restrained and enjoined from further unlawful conduct.

64. Anthropic A.I's remedy at law is inadequate to compensate it for future injuries it has and will continue to suffer in the future if the continued acts of infringement are not stopped and abated.

65. The foregoing acts of infringement by Defendants in appropriating the **ANTHROPIC A.I.** Mark has been and continues to be, deliberate, willful and wanton, making this an exceptional case within the meaning of 15 U.S.C §1117.

66. Anthropic A.I is entitled to a permanent injunction against Anthropic – as well as Mr. Amodei and Ms. Amodei individually for their direct and intentional actions - as well as all other monetary remedies available under the Lanham Act, including, but not limited to, compensatory damages, treble damages, disgorgement of profits, costs and attorney's fees.

## COUNT II

### FEDERAL UNFAIR COMPETITION –UNDER 15 U.S.C. §1125(a)

67. Anthropic A.I. re-alleges and incorporates all paragraphs of this Complaint as if fully set forth herein.

68. This Count II is an action by Anthropic A.I. against all Defendants (including Mr. Amodei and Ms. Amodei based upon their direct actions) for acts of Federal Unfair Competition under 15 U.S.C. § 1125(a) regarding Defendants' improper and unauthorized adoption and use of the Implicated Name and Implicated Logo.

69. Anthropic A.I. began use in commerce of its **ANTHROPIC A.I.** Mark by April 2020 for its software as a service (SAAS) services featuring software using artificial

intelligence and a hybrid computer learning system for subjective statistical analysis and subjective predictive analysis.  The foregoing well predates any of Defendants' adoption, selection, and use of the ANTHROPIC name.

70. Anthropic A.I. exclusively owns and maintains the **ANTHROPIC A.I.** Mark for machine learning technology – including for purposes of marking, promoting, and advertising its Anthropic A.I. Technology (as well as for purposes of conducting research and ultimately licensing rights to the underlying software).

71. Anthropic A.I. maintains exclusive and unencumbered rights to the **ANTHROPIC A.I.** Mark – which have been established over the course of the last three years.

72. Despite the foregoing, Defendants have used, advertised, marketed and promoted its line of competing machine learning technology under the Implicated Name and Implicated Logo – all without authorization, permission or right from Anthropic A.I.

73. Defendants' use of the Implicated Name and Implicated Logo are directed to the similar technology compared to the Anthropic A.I. Technology – and to the same marketing channels and the same customers as Anthropic A.I.

74. As such, the Defendants actions are in violation of 15 U.S.C. § 1125(a) in that Defendants used and continue to use, in relation to commercial activities, multiple false designations or origin, or a false or misleading descriptions – which are included in the Implicated Name and Implicated Logo– all of which are likely to cause confusion, to cause mistake, and to deceive, as to the affiliation, connection, or association with Anthropic A.I.

75. Anthropic A.I. has suffered, and will continue to suffer, irreparable harm resulting from the foregoing acts of unfair competition by Defendants.  Anthropic A.I. will suffer additional irreparable harm unless Defendants are enjoined by the Court from continuing those acts, which constitute unfair competition.

76. Anthropic A.I. has no adequate remedy at law.

77.     Upon information and belief, Defendants acts of unfair competition are willful and this is an exceptional case within the meaning of 15 U.S.C. §1117.

## COUNT III
## COMMON LAW UNFAIR COMPETITION
## AND TRADEMARK INFRINGEMENT

78.     Anthropic A.I. re-alleges and incorporates by reference all paragraphs of this Complaint as if fully set forth herein.

79.     This Count III is an action for unfair competition and trademark infringement under the common law of the State of Arizona directed against all Defendants.

80.     Defendants' conduct violates Anthropic A.I.'s common law trademark rights and constitutes unfair competition and trademark infringement.

81.     The relevant consuming public recognizes ANTHROPIC A.I. as the underlying machine learning technology offered under the ANTHROPIC name.

82.     Defendants' actions are likely to cause confusion, or mistake, or to deceive as to Defendants' affiliation, connection, or association with Anthropic A.I., or as to the origin, sponsorship, or approval of its commercial activities.

83.     Defendants committed these acts maliciously and in conscious disregard of Anthropic A.I.'s rights.

## PRAYER FOR RELIEF

WHEREFORE, for all of the foregoing reasons, Plaintiff ANTHROP, LLC d/b/a ANTHROPIC A.I requests this Honorable Court grant relief in the following manner:

a.     Defendants and their agents, servants, employees, and those people in active concert or participation with them be preliminary and permanently enjoined from infringing on Plaintiff's **ANTHROPIC A.I.** Registration (and associated **ANTHROPIC A.I.** Mark) or colorable imitation thereof - including but not limited to their improper use of the Implicated Name and Implicated Logo (including through use of any associated domain names, the Anthropic Website, any associated websites that includes the

ANTHROPIC Name, any social media handles (in addition to the Twitter account (@AnthropicAI), and any associated uses of the **ANTHROPIC** name).

   b. Anthropic A.I. be awarded all other monetary remedies available under the Lanham Act and common law, including but not limited to, penalties and fines, compensatory damages, treble damages, disgorgement of profits, interest, costs and attorney's fees as legally permitted by each count respectively.

   c. Any and all other relief that this Honorable Court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff ANTHROP, LLC d/b/a ANTHROPIC A.I. respectfully demands a trial by jury in this action.

DATED: February 21, 2023   JABURG & WILK, P.C.

            By: /s/ *Maria Crimi Speth*
            Maria Crimi Speth, Esq.
            Aaron K. Haar, Esq.

            Attorneys for Plaintiff
            ANTHROP, LLC d/b/a ANTHROPIC A.I.